561 So.2d 1209 (1990)
Mary Evelyn ELLIS, Individually and As Guardian of Gilbert D. Ellis, Incompetent, Appellant,
v.
N.G.N. OF TAMPA, INC., and Norbert G. Nissen, Appellees.
No. 89-01045.
District Court of Appeal of Florida, Second District.
April 18, 1990.
Rehearing Denied June 5, 1990.
Stevan T. Northcutt of Levine, Hirsch, Segall & Northcutt, P.A., and Thomas S. Martino of Martino, Price & Weldon, P.A., Tampa, for appellant.
Scott W. Dutton and Frank B. Lieppe of Santos & Dutton, P.A., Tampa, for appellees.
PER CURIAM.
In this liquor vendor liability suit, the trial court dismissed the appellant's complaint *1210 for failure to state a cause of action. We affirm.
According to the complaint, the following is what happened. On the evening in question, Gilbert Ellis, a habitual drunkard, consumed approximately twenty alcoholic drinks served to him at a bar in Tampa owned by the appellee, N.G.N. of Tampa, Inc. The other appellee, Norbert G. Nissen, is the director, owner, and manager of N.G.N. of Tampa, Inc. After consuming the drinks, and in an intoxicated condition, Gilbert drove his car in a manner causing it to overturn and crash. He sustained severe injuries including permanent brain damage. He has since been declared incompetent and the appellant is his legal guardian.
The appellant filed suit in the circuit court seeking compensatory and punitive damages. The complaint sets forth the relevant facts and also states, tracking the language of section 768.125, Florida Statutes (1987), that the appellees served Gilbert "knowing that [he] was a person addicted to the use of any or all alcoholic beverages." The appellees moved to have the complaint dismissed claiming that section 768.125 does not provide a first party cause of action for a one-car accident involving an injured adult drinker/driver and because the complaint did not allege that the bar had received written notice from the habitual drunkard's family required as a predicate to liability in section 562.50, Florida Statutes (1987). The complaint was dismissed and then amended to allege basically the same general knowledge since the appellant could not allege that the bar had in fact received written notice. The appellees moved to dismiss on the same grounds. The trial court granted the motion and dismissed the complaint on the grounds that there is no cause of action against the vendor of intoxicants under section 768.125 for injuries received by an intoxicated [adult] driver as the result of a one car accident, citing Puglia v. Drinks on the Beach, Inc., 457 So.2d 519 (Fla. 2d DCA 1984), and Pritchard v. Jax Liquors, Inc., 499 So.2d 926 (Fla. 1st DCA 1986), review denied, 511 So.2d 298 (Fla. 1987).
We affirm the dismissal of the suit but not for the reason given by the trial court. Our decision turns on our analysis of the relationship between section 562.50, found in the chapter titled "Beverage Law: Enforcement," and section 768.125, found in the chapter titled "Negligence."[1] The two sections read as follows:
562.50 Habitual drunkards; furnishing intoxicants to, after notice.  Any person who shall sell, give away, dispose of, exchange, or barter any alcoholic beverage, or any essence, extract, bitters, preparation, compound, composition, or any article whatsoever under any name, label, or brand, which produces intoxication, to any person habitually addicted to the use of any or all such intoxicating liquors, after having been given written notice by wife, husband, father, mother, sister, brother, child, or nearest relative that said person so addicted is an habitual drunkard and that the use of intoxicating drink or drinks is working an injury to the person using said liquors, or to the person giving said written notice, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
768.125 Liability for injury or damage resulting from intoxication.  A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.
Section 562.50 is primarily a criminal statute since it specifies that if a liquor vendor provides an intoxicant to a person who is habitually addicted to the intoxicant, after *1211 receiving written notice from the addict's family that the person is so addicted, such vendor shall be guilty of a second degree misdemeanor. Section 768.125, on the other hand, addresses only the civil remedy and omits any mention of a "written notice," although the serving of the alcohol to the habitually addicted person must be done "knowingly."
The appellant argues that the difference in focus of the two sections, i.e., criminal versus civil liability, and the fact that section 768.125 omits the phrase "written notice," provide compelling reasons not to read the two sections in pari materia. Therefore, she claims, the allegation in her civil complaint for damages that the bar served Gilbert knowing that he was a habitual drunkard, without mentioning written notice as the source of that knowledge, was sufficient. She also contends that section 768.125 itself provides a separate cause of action so that a habitual drunkard injured in a one-car accident as a result of being served alcohol may sue for damages against the liquor vendor. The appellees contend, on the other hand, that the statutory sections must be read in pari materia so that the written notice prerequisite of section 562.50 be maintained in the application of section 768.125 before civil liability can attach; and, further, that section 768.125 does not, itself, provide a cause of action.
We find no case law interpreting the two statutory sections in the circumstance of a first party complaint for injuries to a habitual drunkard where there has been no written notice to the liquor vendor. There are cases discussing a parallel situation where an underage drinker's first party complaint for damages results from unlawful service to the minor. Florida has allowed first party complaints on behalf of an injured minor for a number of years, long before section 768.125 was enacted. Davis v. Shiappacossee, 155 So.2d 365 (Fla. 1963). Later, judicial interpretation of chapter 562 upheld third party complaints of other persons injured by the intoxicated minor as stating a cause of action. See Prevatt v. McClennan, 201 So.2d 780 (Fla. 2d DCA 1967) (broadening liability for injuries to third parties resulting from illegal sales to minors). For a detailed history of liquor vendor liability in Florida, see especially Migliore v. Crown Liquors of Broward, Inc., 448 So.2d 978 (Fla. 1984). See also Bankston v. Brennan, 507 So.2d 1385 (Fla. 1987) (no liability for social host serving alcohol to minor, statutes must be read in pari materia); and Armstrong v. Munford, Inc., 451 So.2d 480 (Fla. 1984). The case which comes closest to the factual situation in the instant case is Pritchard v. Jax Liquors, Inc. There, the court reversed the dismissal of a complaint by a third party who was injured by a habitual addict. The complaint, although alleging a violation of section 768.125, did not additionally allege that written notice had been received by the liquor vendor as required in section 562.50. In allowing the complaint to stand, the district court declined to read the statutes in pari materia.
The appellant relies upon Pritchard in arguing that she, too, was not required to allege written notice in her first party complaint. She urges us to reverse, first of all, because the class of persons to be protected under section 562.50 includes the habitual drunkard himself as well as those he consequently injures. This is analogous to the protected class under section 562.11 in the case of minors and third persons whom a minor injures. Therefore, the appellant's argument follows, her first party complaint should be allowed to stand as was the similar third party complaint in Pritchard. We have no disagreement with the appellant and this facet of her interpretation of Pritchard since we also believe that the class of persons to be protected under section 562.50 includes the habitual drunkard/driver as well as those whom he or she injures. Compare Prevatt v. McClennan. This being so, the fact that the appellant's complaint described a first party cause of action was no reason to dismiss it. We do, however, disagree with Pritchard's disposition excusing the need for a written notice as a predicate to the civil liability of the liquor vendor.
Pritchard found no occasion to read the two statutory sections in pari materia *1212 primarily because one provides for criminal liability and the other for civil and, further, because the statutes were enacted at different times and for entirely different purposes. Id. at 928-29. In its construction of section 768.125, the court concluded that this section:
provides two narrow exceptions to the common law rule of nonliability for servers of alcohol to persons who subsequently inflict damages on a third person. This statute is not a penal statute, but is in derogation of the common law and creates a new right in members of the general public. It does not contain any requirement that the alcohol provider have written notice of a person's drinking problem.
Id. at 929.
We do not share this view because our supreme court has specifically held that section 768.125 does not create any new cause of action but is merely a limitation on existing liability. Dowell v. Gracewood Fruit Co., 559 So.2d 217 (Fla. 1990); Bankston, 507 So.2d at 1387; Migliore, 448 So.2d at 980. In the related context of illegal service to minors we have applied this dichotomy of cause-of-action/no-cause-of-action which characterizes the relationship between sections 562.11 and 768.125. Puglia v. Drinks on the Beach, Inc., 457 So.2d 519 (Fla. 2d DCA 1984). Puglia was a case of a one-car accident which caused injuries to the minor driver who had been illegally served alcohol. The injured minor's first party complaint contained two counts: Count I was based on section 562.11 and count II on section 768.125. The trial court dismissed count I because the injured person was 18, the court considering him to have reached majority, and the legal drinking age at that time was 19. The trial court entered a judgment on the pleadings in favor of the defendant on count II. We reversed the dismissal of count I (since 18 was below the legal drinking age), thus reinstating that part of the complaint, but affirmed the judgment on count II. The reason we did not allow the count based on section 768.125 to stand was that there was no separate cause of action which could be stated under that section, citing Migliore and Armstrong. The instant case merely presents an occasion to revisit this issue in the context of a habitual drunkard instead of in the context of an illegally served minor. As we explain below, we think the result is the same.
The history of liquor vendor liability in Florida has been one of expansion and construction. First, at common law, there was no liability for the service of intoxicants and Florida had not enacted a "Dram Shop Act" to create any. Davis v. Shiappacossee, 155 So.2d at 367. Then, after the statute was enacted making sales of intoxicants to minors (and later habitual drunkards) illegal, case law recognized a statutory expansion of liability to cover illegally served minors who consequently injured themselves, id., and to others whom the intoxicated minor injured, Prevatt v. McClennan. See Migliore, 448 So.2d at 980. The creation of any new cause of action, nonexistent at common law, thus occurred in the enactment of sections 562.11 and 562.50. This broadened liability, recognized by Migliore only for the exceptional cases of minors and habitual drunkards, was subsequently limited by the enactment of section 768.125. Bankston, 507 So.2d at 1386 citing Migliore, 448 So.2d at 981.[2] As the evolution of the law of liquor vendor liability presently stands in Florida, the liability and causes of action founded on sections 562.11 and 562.50 (initially only criminal liability expanded by case law also *1213 to mean civil liability) is now constricted by section 768.125.
Keeping in mind, then, the legislatively limited nature of liquor vendor liability in Florida, we are, contrary to our sister court in Pritchard, constrained to read sections 562.50 and 768.125 in pari materia because they deal with the same subject matter  unlawful dispensing of alcohol and the consequences thereof, whether civil or criminal. Our view that the two sections are closely interrelated is supported by the fact that when section 768.125 was enacted, the legislature numbered it section 562.51, placing it directly after section 562.50. See Ch. 80-37, § 1, Laws of Fla. It is not significant to our analysis that the Joint Legislative Management Committee later transferred that section to the Negligence chapter instead of placing it as it was enacted in the Beverage Law Enforcement chapter. See Bankston, 507 So.2d at 1387.
To bolster their arguments, both parties have provided this court with the legislative history of section 768.125. This includes a transcript of the proceedings in the Florida House of Representatives at the second reading of House Bill 1561.[3] The appellant contends that, without regard to the question of the changed numbering of the statute or the possibly different purposes of the two sections as Pritchard suggests, this history shows that the House actually did consider the question of notice and then rejected it. Because of this, she urges us to conclude that legislative intent is best implemented by not requiring written notice before civil liability can attach to servers of alcohol to habitual drunkards.
Legislative intent can be illuminated by consideration of the comments made by proponents of a bill or amendment. See, e.g., Magaw v. State, 537 So.2d 564, 566-67 (Fla. 1989) (construing Ch. 86-296, Laws of Fla., to determine if legislative amendment added causation element to crime of DUI manslaughter; quoting staff analysis prepared by House Committee on Criminal Justice and floor debate in senate on date of passage). Legislative history also can provide credible evidence regarding intent especially where, as here, passage of the bill as amended immediately follows the proponent's discussion. See Rhodes and Seereiter, The Search for Intent: Aids to Statutory Construction in Florida  An Update, 13 Fla.St.U.L.Rev. 485, 503-04 (Fall 1985) citing Jones, Extrinsic Aids in the Federal Courts, 25 Iowa L.Rev. 737, 751-52 (1940). See also, Piezo Technology v. Smith, 413 So.2d 121, 123 (Fla. 1st DCA 1982) (determining whether cause of action for retaliatory discharge created, where legislative journals show language providing particular construction was removed and replaced by amendment giving different meaning, court will avoid construction based on provision before amendment, quoting 30 Fla.Jur. Statutes § 103 (1974)), approved, 427 So.2d 182 (Fla. 1983). After studying the legislative history provided to us, we do not agree with the appellant that the discussion of the House members shows an intent that the appellant would wish. Rather, we believe it reveals the opposite intent.
The debate in the House demonstrates that HB 1561 was introduced in the 1980 session as an attempt to meet the objections of the governor who had vetoed a similar reverse dram shop act passed in the 1979 session. The sponsors of the 1980 bill were cognizant of the views of the governor and the legislative opponents of the previous act and were attempting a compromise to obtain passage of an acceptable reverse dram shop measure. When HB 1561 was first introduced, it read as follows (the italics are ours):
562.51 Liability for injury or damage resulting from intoxication.  Whoever sells or furnishes alcoholic beverages to a person shall not thereby become liable for injury or damage caused by or resulting *1214 from the intoxication of such person; provided, that whoever willfully and unlawfully sells or furnishes alcoholic beverages to a person under 18 years of age may become liable for injury or damage caused by or resulting from the intoxication of such minor and provided further that any person convicted of a violation of s. 562.50 may become liable for injury or damage caused by or resulting from the intoxication of such drunkard.

An amendment was introduced to remove the italicized language and substitute the following language which was adopted and now, renumbered, appears as section 768.125:
age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.[4]
One of the proponents of the amendment, Representative Gustafson explained the meaning of the amendment to the House:
REP. GUSTAFSON: Mr. Speaker, members of the House. This won't solve everyone's problem regarding this bill because it still is a reverse dram shop act, but it certainly  this amendment certainly will reduce the objection I hope of many of the members. Right now the statute, the bill, would propose that the only time you could be held liable is when you willingfully [sic] and knowful [sic]  willingly and unlawfully serve a person under 18 and where you have been convicted under the Florida Statute 562.50. What that means is if you unlawfully serve a minor or you are convicted of a crime of serving a habitual drunkard, then you will be responsible. The problem is that it is very unlikely that you will be convicted of that crime in the State of Florida. It requires the written notice from a relative to the bar owner notifying him of the habitual condition and for the bar owner to refuse to acknowledge that and to serve the habitual drunkard anyway, and then that drunkard has to go out and hurt somebody, and then if you get that conviction then you may be able to get the civil liability. That is 
SPEAKER: Is there debate? Is there debate?
REP. GUSTAFSON: Mr. 
SPEAKER: If there is no debate, you can go ahead and pass it if you would like.
REP. GUSTAFSON: The amendment  that explains what the bill is without the amendment. With the amendment it simply provides that if you knowingly serve a person who is habitually addicted to alcoholic beverages then you will be responsible.[5]
As we understand this explanation, the bill as introduced required too many hurdles to overcome before civil liability could attach to the vendor in the case of a habitual drunkard. Below is a comparison of the elements of the bill as originally introduced and the elements of the amended version:

 CIVIL LIABILITY WILL BE IMPOSED ONLY WHEN THE FOLLOWING ELEMENTS
 ARE PROVEN
 ORIGINAL BILL: FINAL VERSION AS AMENDED:
 conviction of violation of section 562.50  service to habitual drunkard
(which includes a written notice done knowingly;
requirement);
 injury or damage;  injury or damage;
 caused by drunkard's intoxication.  caused by drunkard's
 intoxication.

*1215 The criteria in the original version were apparently seen as too stringent to assure passage and the amendment was proposed to dilute these requirements. All the criteria of the original bill were retained in the amended version except the requirement of a previous conviction under section 562.50.
We can only conclude from this comparison that what was troubling the legislature was the requirement of a previous conviction, not the requirement of notice per se. Representative Gustafson's specific comment that the "problem" was that it was very unlikely that the necessary conviction could be obtained is further evidence that we reach the correct conclusion in interpreting this legislative concern. Regarding notice as a prerequisite to civil liability, the legislature retained in section 562.51 (i.e., 768.125) the other integral component of section 562.50 (besides the conviction) by requiring that the server of liquor must knowingly serve the habitual drunkard. The legislature was, of course, cognizant of the manner necessary to impart the requisite knowledge in order to impose liability under section 562.50, i.e., written notice. In 1980, it merely added the next following provision, section 768.125 (ne 562.51), as a limitation to the existing liability which already had a written notice prerequisite. Since these sections directly followed one another in the same chapter, and related to the same subject, we read them together to conclude that the legislature intended that the vendor's "knowledge" be obtained in the same manner in both sections, to wit, by written notice. We reach this conclusion by complying with Ferguson v. State, 377 So.2d 709 (Fla. 1979), which mandates that we construe together and compare statutes which relate to the same or to a closely related subject or object and that we view the entire statutory scheme to determine legislative intent. Since section 768.125 is a limiting provision and does not create any cause of action, it could not broaden, or make easier, the way in which the existing liability under section 562.50 would attach. It would, indeed, be anomalous for us to allow, after and in spite of the legislatively mandated limitation upon liability, such a loophole through which plaintiffs could sue to impose liability upon a vendor without written notice where such suit could not proceed before the 1980 limitation was in place.
In sum, we hold that commercial providers of liquor to a habitual drunkard must have written notice of the drunkard's addiction before the vendors may be subjected to civil liability for the patron's self-inflicted injuries or injuries to others because of the patron's drunken condition. We realize that the delivery of a written notice to the operator of a habitual drunkard's favorite tavern will place little impediment in the destructive path of the drunkard. He or she will likely evade the consequences of the written notice by simply going down the street to an establishment which has not received such a written notice. Be that as it may, we believe that the intent of the legislature in this statutory scheme is to limit the criminal and civil liability of the liquor server who has not received the required written notice.
Affirmed.
CAMPBELL, C.J., and DANAHY and FRANK, JJ., concur.
NOTES
[1] The present section 768.125 was originally enacted as section 562.51. Ch. 80-37, Laws of Fla.
[2] As further evidence of the limiting nature of this enactment, we note that when the Florida Senate considered the House bill, it adopted an amendment broadening liability to include social host servers of liquor before sending the bill back to the House. HB 1561, Fla.S.Jour. 271 (Reg.Sess. 1980). The House of Representatives refused to concur in the amendment broadening the liability. The Senate acceded and passed the bill in the form the House had enacted it. The liability-limiting nature of the bill is further evidenced by its title which says the bill "provid[es] that a person selling or furnishing alcoholic beverages to another person is not thereby liable for injury or damage ...; providing exceptions." Ch. 80-37, Laws of Fla. (emphasis added).
[3] To avoid confusion, we reiterate that this is the bill which was to be section 562.51 when it was enacted as chapter 80-37 of the session laws but which ultimately became section 768.125 in our statutes.
[4] We note that there are minor discrepancies in the language of the bill and the final version of the statute but they are irrelevant to our discussion.
[5] Transcript, Excerpt of April 22, 1980 proceedings on the floor of the House of Representatives relative to HB 1561 (Florida State Archives, Series 38, Box 61, Tape 1, Side 2).