# Third District Court of Appeal

## State of Florida

Opinion filed December 12, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D18-106 & 3D17-2704
Lower Tribunal No. 15-267-K
_____


**Hayes Robertson Group, Inc., etc.,**
Appellant/Appellee,

vs.

**Timothy Christopher Cherry, etc., et al.,**
Appellees/Appellants.


Appeals from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Dixit Law Firm and Shyamie Dixit and Robert L. Vessel (Tampa), for appellant/appellee.

Horan, Wallace & Higgins and Darren M. Horan and David Paul Horan; The McKee Law Group and Robert J. McKee (Davie); Lewis Legal Group and Jeannete C. Lewis (Plantation); Brill & Rinaldi, The Law Firm and David W. Brill and Joseph J. Rinaldi, Jr.; Russo Appellate Firm and Elizabeth K. Russo and Paulo R. Lima, for appellees/appellants.


Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

SALTER, J.

These consolidated appeals arise from a tragic death and personal injuries in Key West, Florida, caused in a vehicular collision by an alcohol-impaired, off-duty employee of a restaurant company. In Case No. 3D17-2704, the decedent's estate and three survivors of the accident appeal an adverse jury verdict, the denial of their motion for a new trial, and final judgment. In Case No. 3D18-106, the defendant, Hayes Robertson Group, Inc., doing business as Fogarty's Restaurant ("Hayes Robertson"), appeals the denial of its motion for attorney's fees based on its three pretrial proposals for settlement to the plaintiffs. For the reasons which follow, we affirm the final judgment in favor of Hayes Robertson and we affirm the order denying Hayes Robertson's motion for attorney's fees.

Facts and Procedural Background: Final Judgment on Liability (3D17-2704)

At about 10:15 p.m. on October 31, 2014, an automobile driven by Daniel Mira, Jr. ("Mira"), struck from behind two couples riding Mopeds, seriously injuring all four of the Moped riders; one of the four died as a result of those injuries. The decedent's personal representative and the three survivors are the four plaintiffs in the underlying lawsuit for wrongful death and personal injury in the Monroe County Circuit Court.

Mira was employed as a line cook at Fogarty's Restaurant. On the night of the accident, Mira clocked out and left work a little after 5:00 p.m., went home, and

2

returned about 7:00 p.m. with another off-duty co-worker. Mira and his co-worker had several drinks at the bar in the restaurant. The bartender testified that Mira did not appear to be drunk when he arrived, but did seem impaired after he left the restaurant for about twenty minutes and returned.

By the time Mira prepared to leave the restaurant, around 10:00 p.m., he was intoxicated. The bartender testified that Mira was slurring his speech and could barely walk. As an employee, Mira was entitled to a fifty percent discount on his bar tab, subject to approval by the manager on duty.

The number of alcoholic drinks consumed by Mira while at the bar that evening was disputed. Hayes Robertson never produced a copy of the tab. Hayes Robertson stipulated that three hours after the crash, Mira's blood alcohol level was 0.173 grams per deciliter--more than twice the legal limit. It also stipulated that, at the time of the accident, Mira's blood alcohol level was 0.20 grams per deciliter.

The plaintiffs sued Hayes Robertson, Mira, and Mira's father (as owner of the vehicle driven by Mira at the time of the accident). The claims against Hayes Robertson were based on (1) the liability of an employer which permits its employee to leave the business premises intoxicated, as elaborated in cases such as Carroll Air Systems, Inc. v. Greenbaum, 629 So. 2d 914 (Fla. 4th DCA 1993), and (2) an exception in Florida's Dram Shop Act, section 768.125, Florida Statutes (2014), permitting a claim of liability against one who "knowingly serves a person habitually

3

addicted to the use of any or all alcoholic beverages," for "injury or damage caused by or resulting from the intoxication of such . . . person."

Proof that Mira was "habitually addicted" to alcoholic beverages, and that Hayes Robertson knew of that addiction, was vigorously disputed. The plaintiffs retained a forensic toxicologist, Mr. Ronald Bell, as an expert to address (1) "retrograde extrapolation" of blood alcohol content (BAC) levels,[1] and (2) whether Mira was habitually addicted to alcohol.

The first topic, retrograde extrapolation, was resolved by the parties in the stipulation regarding Mira's BAC levels about three hours after the accident and at the time of the accident. The second topic, however, required a detailed inquiry into Mr. Bell's expertise and qualifications.

Mr. Bell is a Fellow of the American Board of Forensic Toxicology. His summary of qualifications as a "forensic toxicology consultant" includes a bachelor of science degree in chemistry, as well as non-degree graduate coursework in pharmacology. That summary further represents that he is able to "offer consultation and/or expert testimony in the following areas:

- Effects of alcohol on human performance

- Retrograde extrapolation

---

[1] Retrograde extrapolation uses a BAC level from a blood sample collected at a later time (after an automobile crash, for example) to estimate the BAC at an earlier time (the time of the crash, for example).

4

- Calculations relating blood alcohol level to amount of alcohol consumed

- Effects of drugs on human performance

- Calculations relating drug dose to blood concentrations

- Role that drugs play in a person's death

- Review of laboratory data to determine validity."

Missing from this list of topics is the subject of habitual addiction to alcohol and the medical expertise required to express a qualified diagnostic opinion on that issue. Mr. Bell does not have a medical degree, or any diploma or certification from the American College of Medical Toxicology.

In pretrial proceedings, Mr. Bell provided an affidavit opining that Mira "is an alcoholic."

> Anyone who can achieve a blood alcohol concentration exceeding 0.16 [grams per deciliter] and display some degree of function even if poor (walking, talking, etc.), has developed enough tolerance to the overt behavioral effects of alcohol to be defined as habitually addicted to alcohol.

Mr. Bell further relied upon Mira's "Marchman Act"[2] detention about six weeks before the accident, based on "his severe state of intoxication" and Mira's admissions "that he abused alcohol, often binged when consuming alcohol and was an alcoholic."

---

[2] See § 397.675, Fla. Stat. (2014).

5

The only authoritative reference work relied upon by Mr. Bell was a medical textbook, Medical Toxicology: Diagnosis and Treatment of Human Poisoning, by Matthew J. Ellerman, M.D. During a pretrial deposition and additional pretrial testimony before the trial court on the motion to exclude his opinion on habitual addiction to alcohol, Mr. Bell conceded: the laboratory tests upon which he relied were only one criterion of many in Dr. Ellerman's discussion of the medical diagnosis of alcoholism, and he had not assessed the other criteria; medical toxicology is a different specialty from forensic toxicology; he was unfamiliar with the Diagnostic and Statistical Manual of Mental Disorders ("DSM"); the textbooks in the field of forensic toxicology do not address alcoholism; and he did not conduct any laboratory tests indicating that Mira's BAC exceeded .3 grams per deciliter at any time. Mr. Bell did not assess Mira's physiological dependence as manifested by a withdrawal syndrome, nor did he examine Mira's medical records regarding his treatment by a psychiatrist.

Before reaching its decision to exclude Mr. Bell's proffered opinion as to whether Mira was "habitually addicted to alcohol," the trial court also questioned Mr. Bell whether training in forensic toxicology could be a sufficient basis for "diagnosing a person as addicted to alcohol or an alcoholic." Ultimately the court concluded that medical toxicology and the ability to express an admissible opinion on habitual addiction to alcohol were beyond Mr. Bell's experience and

6

qualifications. The trial court did not restrict its ruling in limine to a determination based exclusively on Daubert.[3]

The jury returned a verdict that (1) Hayes Robertson was not negligent in allowing Mira to leave the restaurant in an intoxicated condition before the accident, and (2) Hayes Robertson did not knowingly serve alcoholic beverages to a person habitually addicted to the use of such beverages. The plaintiffs filed a motion for new trial and other post-trial relief, which was denied after a further hearing. The plaintiffs' appeal to this Court, Case No. 3D17-2704, followed.

<u>Facts and Procedural Background: Proposals for Settlement (3D18-106)</u>

Hayes Robertson served proposals for settlement on the three individual plaintiffs at three different points in the pretrial proceedings. The first two sets of proposals offered $500.00 per plaintiff, and the third set of proposals offered $100.00 per individual plaintiff. None of the proposals were accepted and all were thus deemed rejected.

After trial and the defense jury verdict, Hayes Robertson moved for attorney's fees pursuant to section 768.79, Florida Statutes (2017). The individual plaintiffs opposed the motion, contending that the proposals were not made in good faith and that the proposed release of all claims appended to the proposals for settlement rendered the proposals ambiguous and unenforceable.

---

[3] Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993).

7

Following a hearing, the trial court entered a detailed order in January 2018 denying Hayes Robertson's motion and claim for entitlement to attorney's fees. The court canvassed applicable case law and, on the basis of its familiarity with the pretrial and trial proceedings, determined that the offers were not made in good faith.

> [There were] two main issues tried in the case and there was substantial evidence admitted as to both claims. Summary judgment was denied because there were material issues of fact on these two points.
>
> * * * * *
>
> [t]he offers of $500.00 and $100.00 did not bear a reasonable relationship to the damages claimed as a result of the automobile versus motorcycle crash that injured the Plaintiffs. At the time each offer was made, the claims against [Hayes Robertson] had merit, and it appeared that Hayes faced at least some exposure. Thus, the court finds that the nominal offers were not made in good faith.

The trial court also concluded that the releases attached to the proposals for settlement were unclear because they could be construed to release more than the offeree—in particular, the releases could be construed to release Mira.

Hayes Robertson appealed the order denying its motion for attorney's fees. That appeal is consolidated Case 3D18-106.

Analysis: Final Judgment on Liability (3D17-2704)

The plaintiffs contend that the trial court erred in, among other things, applying section 90.702, Florida Statutes (2017), and Daubert rather than Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), or Marsh v. Valyou, 977 So. 2d 543 (Fla. 2007), in assessing the admissibility of Mr. Bell's proffered expert testimony

8

regarding Mira's alleged habitual addiction to alcoholic beverages. The plaintiffs are correct that the constitutionality of section 90.702, an issue in contention at the time the trial court made its decisions on the evidentiary issue, "is a pure question of law subject to de novo review." City of Fort Lauderdale v. Dhar, 185 So. 3d 1232, 1234 (Fla. 2016).

After the briefing was completed in these appeals, and only two days before oral argument, the Florida Supreme Court issued its opinion in DeLisle v. Crane Co., 43 Fla. L. Weekly S459 (Fla., Oct. 15, 2018). In DeLisle, the Supreme Court reaffirmed "that Frye, not Daubert, is the appropriate test in Florida courts," 43 Fla. L. Weekly at S462, concluding that the amendment to section 90.702 was procedural, an incursion into the Supreme Court's jurisdiction to adopt such rules, and thus unconstitutional.

DeLisle also reaffirms that a trial court has broad discretion in ruling on the range of subjects on which a particular proffered expert may provide admissible testimony, and the ruling "will be upheld absent a clear error." Id. (citing Davis v. State, 142 So. 2d 867, 872 (Fla. 2014) (quoting Penalver v. State, 926 So. 2d 1118, 1134 (Fla. 2006)). In the present case, we consider the term "habitually addicted" in section 768.125, and the trial court's decision to exclude Mr. Bell's proposed opinion regarding Mira's alleged habitual addiction.

The dictionary provides alternative definitions of "addiction" as pertinent here:

> a: the quality or state of being addicted; *specif*: the compulsive uncontrolled use of habit forming drugs beyond the period of medical need or under conditions harmful to society.

> b: enthusiastic devotion, strong inclination, or frequent indulgence.

Webster's Third New International Dictionary, Unabridged, at 24 (1986).

The first definition raises medical and mental health issues regarding compulsion, uncontrolled use, and "habit forming drugs." These issues are similar to those inherent in the American Psychiatric Association's current diagnostic terms for "alcohol use disorder."[4] Such a diagnosis would require a medical professional's interview with the patient (and perhaps others) and any relevant lab tests or physical examinations. And such a diagnosis would not rest on the basis of two BAC reports (months apart) or by a toxicologist considering the testimony of lay witnesses about an individual's habits regarding alcohol.

The second dictionary definition, based on "frequent indulgence" as applied to alcoholic beverages, veers away from medical diagnosis and into the realm of subjective observation. One consumer's "frequent indulgence" may be two beers

---

[4] In the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed.), eleven diagnostic criteria are relevant to three sub-classifications of "alcohol use disorder."
See https://pubs.niaaa.nih.gov/publications/dsmfactsheet/dsmfact.pdf (site last visited November 27, 2018).

after work on Friday nights; another's may be so-called binge drinking several times a year; and another's may be daily consumption to the point of losing consciousness. Fact-finding on the basis of that definition seems well within the province of a jury presented with the evidence in the record before us. Given the stipulation between the parties regarding Mira's BAC levels upon arrest and at the time of the accident, Mr. Bell's proffered toxicology testimony would then seem merely to bolster the testimony of lay witnesses with an incomplete attempt at medical diagnosis (hence Mr. Bell's reliance on a reference text on "medical" toxicology).

A review of the legislative history of section 768.125, as enacted in 1980; the separate misdemeanor offense of furnishing intoxicants to a "habitual drunkard" after notice;[5] and the few reported Florida cases on the term "habitually addicted," do provide helpful insight, however.

Initially, section 768.125 was to be numbered 562.51 to follow the "habitual drunkard" statute, section 562.50. Liability for serving a "habitual drunkard" was to be limited to a person convicted of a violation of section 562.50. An amendment removed the conviction requirement and direct link to section 562.50, and the statute

---

[5] This statute, section 562.50, Florida Statutes (2018), was originally enacted in 1945. A person providing an alcoholic beverage (or other enumerated types of intoxicants) to a person "habitually addicted to the use" of such beverages or other intoxicants, after being given written notice "by wife, husband, father, mother, sister, brother, child, or nearest relative that said person so addicted is an habitual drunkard and that [the drunkard or person providing written notice is being injured] shall be guilty of a misdemeanor of the second degree . . . ." § 562.50.

11

in its present form was enacted.  Ellis v. N.G.N. of Tampa, Inc., 561 So. 2d 1209, 1213-14 (Fla. 2d DCA 1990).  The Second District decision in Ellis, which nonetheless retained the written notice requirement of section 562.50, was quashed by the Supreme Court of Florida in Ellis v. N.G.N. of Tampa, Inc., 586 So. 2d 1042 (Fla. 1991) ("Ellis II").

Though the term "habitual drunkard" was eliminated in the enactment of section 768.125 (but the term "habitually addicted" was retained), the Supreme Court's decision continued to use the terms interchangeably:

> We find the cause of action [in section 768.125] in this circumstance only requires evidence that the vendor had knowledge that the individual the vendor served was a habitual drunkard.  Serving an individual multiple drinks on one occasion would be insufficient, in and of itself, to establish that the vendor knowingly served a habitual drunkard alcoholic beverages.  On the other hand, serving an individual a substantial number of drinks on multiple occasions would be circumstantial evidence to be considered by the jury in determining whether the vendor knew that the person was a habitual drunkard.  We agree with the Fifth District Court of Appeal in Sabo v. Shamrock Communications, Inc., 566 So. 2d 267 (Fla. 5th DCA 1990), approved sub nom. Peoples Restaurant v. Sabo, [591 So. 2d 907 (Fla. 1991)], that this element can properly be established by circumstantial evidence.

Id. at 1048-49.

Subsequent district court decisions[6] have applied the Supreme Court's opinion in Ellis II, and the trial court did so in the present case as well.  The trial

---

[6]  Murphy v. S. Mut. Mgmt. Corp., 936 So. 2d 786 (Fla. 4th DCA 2006); Gonzalez v. Stoneybrook W. Golf Club, LLC, Inc., 225 So. 3d 891 (Fla. 5th DCA 2017).

12

court did not abuse its discretion in excluding Bell's proffered testimony, whether under Daubert and section 90.702, Frye, or Marsh.

Ultimately the jury heard testimony from Mira, his ex-wife, the bartender on duty the night of the accident, his passenger and co-worker, the police officer who arrested Mira at the crash scene, and other Hayes Robertson employees, regarding Mira's consumption of alcoholic beverages, his work record (attendance and performance), and his consumption of other drugs. This evidence comprised the plaintiffs' effort to establish, by circumstantial evidence as in Ellis II, that Mira was a "habitual drunkard" or "habitually addicted" to alcohol.

The jury instructions included a reading of section 768.125 and a charge summarizing the 768.125 claim: that Hayes Robertson was negligent "by the service of alcohol to Daniel Mira, Jr. on the night in question, when [Hayes Robertson] knew or should have known that Daniel Mira, Jr. was habitually addicted to the use of any or all alcoholic beverages." After deliberation, the jury rendered its verdict finding that Hayes Robertson had not knowingly served alcohol to a person habitually addicted to the use of any or all alcoholic beverages.[7] The interrogatory verdict on

---

[7] The jury also returned a verdict of no liability on the negligence claim of allowing Mira to leave Hayes Robertson's premises "in an intoxicated condition" the night of the accident. It was undisputed that Mira was "off the clock" as he consumed alcoholic beverages that evening and as he and his passenger left the premises to drive away. We find no error in the conduct of the trial or the jury's verdict on this claim, as this case is entirely distinguishable from the negligence cases relied upon by the plaintiffs, including Carroll Air Systems, Inc. v. Greenbaum, 629 So. 2d 914

768.125 was composite: the jury was not asked separate questions regarding (1) whether Mira was "habitually addicted" to alcoholic beverages and (2) if so, whether Hayes Robertson knew, or should have known that and served him anyway.

Analysis: Order Denying Attorney's Fees (3D18-106)

The abuse of discretion standard of review also applies to our consideration of the trial court's conclusion that the proposals for settlement were not made in good faith. State Farm Fla. Ins. Co. v. Laughlin-Alfonso, 118 So. 3d 314, 315 (Fla. 3d DCA 2013). In this case, the question is whether Hayes Robertson had a reasonable basis at the time of the offers to conclude that its exposure was nominal. Mount Vernon Fire Ins. Co. v. New Moon Mgmt., Inc., 239 So. 3d 183, 185 (Fla. 3d DCA 2018). Here, unlike the straightforward insurance policy coverage question in Mount Vernon Fire Ins. Co., a final summary judgment was not obtained by the offeror immediately after making the offer (Hayes Robertson's motions for summary judgment were denied, in the present case), there was ample circumstantial evidence regarding Mira's consumption of alcoholic beverages, letting the liability issues go to the jury under Ellis II, and there was certainly no guarantee that the jury verdict would be for Hayes Robertson.

---

(Fla. 4th DCA 1993), and Bardy v. Walt Disney World Co., 643 So. 2d 46 (Fla. 5th DCA 1994).

Trial of the case was bifurcated, so damages were not reached in the liability phase. But the order of magnitude of those damages, if the jury had found liability on either or both of the plaintiffs' causes of action, is obvious from the record. Compensatory damages in a case of wrongful death and three significant personal injury claims would be far from nominal. Here, as in Event Services America, Inc. v. Ragusa, 917 So. 2d 882, 884 (Fla. 3d DCA 2005), we find no abuse of discretion in the trial court's assessment of the nominal offers and the prospect that, at the time of the offers, the defendant "had at least some exposure."

For these reasons, we affirm the trial court's order denying an award of attorney's fees based on the proposals for settlement. Our decision on this issue makes it unnecessary to consider the second argument (ambiguity) advanced by the plaintiffs regarding the order denying Hayes Robertson's motion for attorney's fees.

Conclusion

Nothing can alter the tragic aspects of the accident and its impact on the victims, the conviction and imprisonment of Mira for a lengthy term of years, and the effect on several families. But the trial court's careful consideration of the proffered expert witness testimony (particularly with the standards of admissibility in contention in a pending Florida Supreme Court case) and its conduct of the trial and post-trial proceedings were exemplary.

For the reasons detailed in this opinion, we affirm the final judgment in favor of Hayes Robertson as to liability, and we affirm the order denying Hayes Robertson's motion for attorney's fees, in these consolidated cases.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS.  A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS  THEREAFTER.**